# United States Court of Appeals
## For the First Circuit

No. 15-1720

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES STILE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Kayatta, Circuit Judges.

Alexandra H. Deal for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

January 3, 2017

**KAYATTA**, **Circuit Judge**. The defendant, James Stile, pled guilty to robbery of a controlled substance from a pharmacy by use of a dangerous weapon, in violation of 18 U.S.C. § 2118(a) and (c)(1). The district court sentenced him to 120 months in prison. He now appeals that sentence on both substantive and procedural grounds. For the following reasons, we affirm.

## I.    Background

We summarize the facts briefly, drawing on the presentence report (PSR) and the transcript of the sentencing hearing. See United States v. Jiminez, 498 F.3d 82, 84 (1st Cir. 2007). We reserve further discussion of the facts for where they become relevant to each issue raised by Stile's appeal.

In the early evening of September 12, 2011, Stile entered the E.W. Moore & Son Pharmacy in Bingham, Maine. He wore a baseball cap, sunglasses, a dust mask, and purple rubber gloves. As he entered the store, he pulled a sawed-off shotgun from his pants. He walked to the pharmacy counter at the back of the store and ordered three employees to lie on their stomachs. When a customer walked in, Stile forced him behind the pharmacy counter with the employees. Stile handed the owner of the pharmacy a black duffel bag and ordered him to fill it with drugs. Stile tied the hands and feet of the owner, the customer, and the employees with zip ties. He then departed the store, taking $12,890 worth of drugs and $417 in cash.

After initially pleading not guilty and going through several preliminary proceedings including a suppression hearing, Stile pled guilty to robbery of a controlled substance from a pharmacy by use of a dangerous weapon, in violation of 18 U.S.C. § 2118(a) and (c)(1). After conducting a sentencing hearing, the district court calculated Stile's advisory sentencing range under the United States Sentencing Guidelines, U.S.S.G. §§ 2B3.1 and 3C1.1, to be 108 to 135 months' imprisonment based on a total offense level of 31 and a criminal history category of I. The district court sentenced Stile to 120 months of imprisonment.

At sentencing, the district court did three things that Stile now claims were procedural error. First, the district court applied a two-level enhancement to what would have otherwise been a total offense level of 29. The basis for the enhancement was a finding of obstruction of justice under U.S.S.G. § 3C1.1. Second, the district court denied Stile's requested two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Third, the district court did not give the evidence of Stile's drug addiction the weight and effect that Stile claims it warrants. We discuss in turn each of these asserted errors, plus Stile's catch-all argument that his sentence was substantively unreasonable.

## II. Discussion

### A. Obstruction of Justice

The district court may apply a two-level enhancement to a defendant's offense level

> [i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct.

U.S.S.G. § 3C1.1. Covered conduct includes "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . or attempting to do so." Id. cmt. n.4(A).

In calculating Stile's guidelines sentencing range, the district court applied this enhancement for two independent reasons. First, the court found that Stile had assaulted another inmate in an attempt to intimidate that inmate from testifying against Stile. Second, the court found that Stile had committed perjury during a suppression hearing in December 2012. Stile challenges both findings, either of which is independently sufficient to sustain the enhancement. We begin--and end--by explaining why we see no cause to reverse the witness intimidation finding.

That finding arose out of Stile's incarceration prior to sentencing. A fellow inmate informed authorities that Stile had

confessed to having committed the robbery, relating many specific details that the inmate could not have made up. The government thereafter gave to Stile's then-counsel a report of the informant's allegations, excluding the informant's name. Just over a month later, a prison video camera captured Stile assaulting the informant. Authorities found in Stile's cell a copy of the report given to his counsel chronicling the information received from the inmate. For obvious reasons, the PSR flagged this incident as warranting an obstruction of justice enhancement.

In Stile's sentencing memorandum, Stile's counsel previewed the prospect of an alternative motive for Stile's attack on the informant: the inmate had supposedly made sexual advances toward Stile. The memorandum acknowledged that there was an informant and that Stile had learned as much. It also made no claim that anyone other than the inmate Stile assaulted was the informant or that Stile had related facts of the robbery to anyone other than the inmate he assaulted. Rather, it challenged the adequacy of the government's proof that Stile knew that the inmate he assaulted was the informant (because the report did not contain the informant's name), and that the fight occurred because the inmate was a potential witness.

The district court commenced the sentencing hearing by explaining to Stile that the court would hear from counsel and "from you if you wish to speak to me." After receiving into

evidence the PSR and assorted exhibits (including a video of the assault), the district court asked Stile's counsel, "Is there anything that you wish to present?" Replied counsel: "No, sir. No evidence, only argument." Defense counsel, consulting in the process with Stile, then argued that the government's evidence was insufficient to show obstruction. Immediately after hearing this argument, the district court issued its findings, ruling that Stile had assaulted the inmate to punish him for informing and to deter him from testifying and noting the absence of any actual evidence of a contrary motive.[1]

After the court announced its ruling, Stile's lawyer stated that Stile wished to "reopen the evidence" on the assault and give his own testimony. The court explained that Stile's request was "a little late in the day," and that, typically, "people put their evidence in front of the judge before he makes the decision, not after the judge makes the decision." Stile's attorney nevertheless asked that the court consider the request to be a motion to reconsider and to reopen the evidence. Such a motion is directed to the court's discretion. Cf. United States

---

[1] The district court noted, specifically, that there was no evidence that the assault was a response to sexual advances. That contention appeared only in the text of the sentencing memorandum. The district court also noted that although the sentencing memorandum stated that Stile was planning to provide the affidavit of another inmate who had witnessed the informant's sexual advances, he never did so.

v. Peterson, 233 F.3d 101, 106 (1st Cir. 2000) ("Generally, if [the defendant] wishes to testify [at trial], he must do so before he rests his case; otherwise, he can move the trial court to reopen the evidence, but the choice whether to reopen is left to the court's sound discretion.").

Before ruling on that motion, the district court warned Stile that if the court reopened the evidence to allow Stile to testify belatedly and found that Stile was not telling the truth, then Stile "[would] receive a harsher sentence." The court explained that it had already gone through the evidence, given Stile's counsel an opportunity to argue in his favor, and found the evidence against Stile so strong that it would have made that same finding "beyond a reasonable doubt" had it needed to do so. The court indicated that Stile would "have a very, very difficult time" convincing the court that he had not assaulted the inmate because the inmate had informed on him. After hearing of this potential downside to testifying, Stile ultimately declined to testify. The court, in turn, relied on the finding of witness intimidation to support the two-level enhancement for obstruction of justice.

Stile does not argue that the foregoing record lacks sufficient support for the district court's finding of witness intimidation. He argues, though, that the finding must be vacated because the district court "prevented" him from offering

exculpatory evidence that would have cast his behavior in a different light and led an open-minded factfinder to a different conclusion. In this respect, Stile says, the district court violated his due process rights and Federal Rule of Criminal Procedure 32 by "threatening" him with a harsher sentence if he testified untruthfully during the sentencing hearing. Stile did not raise this argument below,[2] so we review the court's actions for plain error. United States v. Rodríguez-Reyes, 714 F.3d 1, 10 (1st Cir. 2013). To establish plain error, Stile must show (1) that the court below committed an error; (2) that the error was plain; (3) that the error affected the substantial rights of the defendant; and (4) that "the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Colon-Nales, 464 F.3d 21, 25 (1st Cir. 2006) (quoting United States v. Olano, 507 U.S. 725, 735–36 (1993)).

To advance his argument, Stile relies by analogy on Webb v. Texas, 409 U.S. 95 (1972) (per curiam). There, a defendant in a criminal jury trial called only one witness to testify on his

---

[2] Stile objected to the characterization of the assault as an obstruction of justice and requested that the district court reconsider its ruling at the sentencing hearing, but did not object to the court's "threat[]" about the consequences of providing false testimony. The defendant's statement in court that the judge appeared "predetermined on this" was not an objection to the fact that the judge gave a perjury warning.

behalf.  Id. at 95.  Before the witness testified, and out of the presence of the jury, the trial judge singled out the witness for a direct admonition to the effect that the witness need not testify, and if he did and lied, the trial judge would personally see to it that he was indicted for perjury, followed by a likely conviction and sentence.  Id. at 95-96.  The Supreme Court held that this admonition, delivered in strong terms by the judge to the defendant's only witness, "effectively drove that witness off the stand."  Id. at 98.  Here, Stile reasons, the district court's admonition to Stile drove him to surrender his right to testify at his sentencing hearing.

On plain error review, this argument stumbles at the outset because it is unclear to what extent the principles of Webb apply to sentencing proceedings.  Certainly a defendant has a right to due process at sentencing.  See Betterman v. Montana, 136 S. Ct. 1609, 1617 (2016) ("After conviction . . . [a defendant] retains an interest in a sentencing proceeding that is fundamentally fair.");  United States v. Abreu, 202 F.3d 386, 391 (1st Cir. 2000).  This right is protected both by the Fifth Amendment and by Federal Rule of Criminal Procedure 32.  See United States v. Kenney, 756 F.3d 36, 49 (1st Cir. 2014);  United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991).  As most relevant here, "a criminal defendant enjoys a due process right not to be sentenced on false information, and due process therefore requires

that the defendant be given an adequate opportunity to refute information relied on at sentencing." United States v. Wilfred Am. Educ. Corp., 953 F.2d 717, 722 (1st Cir. 1992) (citation omitted); see also United States v. Rivera-Rodríguez, 489 F.3d 48, 53–54 (1st Cir. 2007). Similarly, Rule 32 gives a defendant the right "to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii); see also Irizarry v. United States, 553 U.S. 708, 715 (2008) ("Rule 32(i)(1)(C) requires the district court to allow the parties to comment on 'matters relating to an appropriate sentence' . . . .").

Nevertheless, the due process right at sentencing is not as robust as the due process right at trial. See Betterman, 136 S. Ct. at 1617 ("After conviction, a defendant's due process right to liberty, while diminished, is still present."); see also United States v. Jackson, 453 F.3d 302, 305 (5th Cir. 2006) ("It is well-established . . . that a defendant's rights at sentencing differ considerably from his pre-conviction rights.").[3] For example, a defendant has no right to insist on calling other witnesses on his

---

[3] Jackson, which considered a perjury warning at a sentencing hearing concerning a witness other than the defendant, suggests that Webb may not apply in that context. 453 F.3d at 305–06. There is a stronger argument that Webb applies here because the potential witness who received the warning was the defendant himself. See Fed. R. Crim. P. 32(i)(4)(A)(ii); United States v. Cruzado-Laureano, 527 F.3d 231, 238 (1st Cir. 2008). We need not decide this issue, though, as we hold that Webb was not violated even if it does apply.

behalf, see United States v. Cruzado-Laureano, 527 F.3d 231, 238 (1st Cir. 2008), and no due process right to disclosure of all information relied upon by the sentencing court if such disclosure is not mandated by Rule 32,[4] see Curran, 926 F.2d at 61-62.

Even putting to one side these caveats qualifying the scope of due process rights at sentencing, and assuming (without deciding) that Webb fully applies to sentencing proceedings, for at least two reasons it would require quite a stretch to conclude that any error, much less plain error, occurred in this case.

First, the intimidation of the witness in Webb occurred during the defendant's presentation of his defense. The witness, who was prepared to testify on the defendant's behalf, constituted the criminal defendant's entire offered defense. Webb, 409 U.S. at 97-98. Calling the witness to testify represented a "fundamental element of due process of law." Id. at 98 (quoting Washington v. Texas, 388 U.S. 14, 19 (1967)). Explicitly refusing to allow the witness to testify would have been a plain and fundamental error. It therefore made sense to police the trial court's admonition to the extent that it served as a de facto refusal to allow the testimony.

---

[4] In Curran, this court used its supervisory powers to compel disclosure of this information, but did not hold that due process required it. 926 F.2d at 63.

Here, by contrast, at the time the court issued its warning to Stile, the court in normal course had already allowed him--indeed, invited him--to present whatever evidence he wished to present without any form of dissuasion. He declined to do so until after the record was closed and the court had decided the matter. At that point, Stile had no right to reopen the proceeding to provide evidence he had possessed during the proceeding. Cf. Peterson, 233 F.3d at 106 (holding that, at trial, the decision whether to reopen the evidence is generally left to the court's sound discretion). Rather, reopening the proceeding for more evidence was within the court's wide discretion, the exercise of which can easily result in a refusal to reopen when no adequate excuse is offered. Cf. id. at 107 ("Without such a requirement of excuse, the rule generally limiting testimony to the evidence-taking stage of a trial would hardly be a rule at all, and it would be too easy for a defendant to postpone testifying for strategic reasons until after the close of evidence.") On appeal, Stile still offers no excuse for having failed to testify when given the opportunity. Nevertheless, when Stile moved to reopen, the court discouraged but allowed the testimony, giving Stile more, not less, than that to which he was entitled.

Second, in Webb the admonitions were the product of an opinion preemptively formed before the defendant even began his defense. Here, the district court had already properly made up

its mind on a properly closed record. Its pronouncements therefore posed no appearance of preemptive fact-finding on a partial record, and made a perjury finding more likely. See United States v. Vavages, 151 F.3d 1185, 1190 (9th Cir. 1998) ("Among the factors courts consider in determining the coercive impact of perjury warnings are the manner in which the . . . judge raises the issue . . . [and the] judge's basis in the record for believing the witness might lie . . . .").

In this context, we read the court's admonition as a disclosure that educated Stile concerning the risks of his gambit, rather than as a threat designed to scare off a proposed witness in his defense. We therefore easily find no plain error.

## B. Acceptance of Responsibility

The district court may decrease the offense level by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Pleading guilty does not automatically entitle a defendant to a reduced offense level for acceptance of responsibility. United States v. D'Angelo, 802 F.3d 205, 210 (1st Cir. 2015). This is particularly true where the defendant has received the enhancement for obstruction of justice under § 3C1.1. It is only an "extraordinary case[] in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1 cmt. n.4; see also United States v. Maguire, 752 F.3d 1, 6 (1st Cir. 2014) (stating that downward

- 13 -

adjustment under § 3E1.1 when a sentence is enhanced for obstruction of justice is "hen's-teeth rare"). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n.5.

Stile argues that: (1) because the court erred in applying the obstruction of justice enhancement, it also erred in not applying the reduction for acceptance of responsibility; and, (2) even if the court did not err in applying the obstruction of justice enhancement, this was an "extraordinary case" in which he should still receive the reduction. Because we have already rejected Stile's challenge to the obstruction of justice enhancement, we consider only the latter argument.

The district court did not clearly err in concluding that Stile had "failed to show that his case [was] an extraordinary one." The district court rested its determination on the fact that Stile both obstructed justice by assaulting the informant and then refused to accept relevant responsibility for the misconduct when caught. However one might label such behavior, we have no trouble concluding that it provided ample support for finding that Stile failed to establish that this is one of those rare cases in which an acceptance of responsibility reduction should be granted to a defendant who has obstructed the government's efforts to

prosecute him.  See U.S.S.G. § 3E1.1 cmt. n.3 (although pleading guilty before trial is "significant evidence of acceptance of responsibility," that evidence "may be outweighed by conduct of the defendant that is inconsistent with such acceptance"); United States v. Meada, 408 F.3d 14, 25 (1st Cir. 2005) (upholding refusal to grant a reduction for acceptance of responsibility where the district court found that defendant was "continuing the misconduct that caused" the court to previously find that he had committed perjury).

## C.    Section 3553(a) Factors

Stile argues that the district court erred by failing to consider adequately the effect of his drug addiction on his conduct, as required by 18 U.S.C. § 3553(a)(1).  In his view, the court should have treated drug addiction as a disease that "diminishes the addict's capacity to evaluate and control his or her behaviors." United States v. Hendrickson, 25 F. Supp. 3d 1166, 1174 (N.D. Iowa 2014).  In so arguing, Stile must acknowledge that the court considered and rejected requests for downward departures on the basis of his drug addiction pursuant to various specific sections of the guidelines, and he does not challenge those decisions.  He also must concede that the district court allowed him to present extensive evidence on his addiction and history.  Nevertheless, he argues that the court abused its discretion by choosing not to vary downward from the sentencing guidelines range

under § 3553(a)(1). See Maguire, 752 F.3d at 7 ("Under the advisory guidelines, discretionary refusals to vary or depart are open to reasonableness review in accordance with an abuse of discretion standard.").

Under § 3553(a)(1), a court determining a sentence is required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Drug addiction may be one relevant characteristic. See United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008). The district court explicitly considered it. The court acknowledged the nearly thirty-year gap since Stile's last criminal conduct, his pain management issues, and his recent relapse. It then weighed those facts against the nature and circumstances of the crime, which appeared to be preplanned and involved threatening the victims with a firearm and tying them up with zip ties. The district court also considered the impact on the victims and the need to deter future crime, which was particularly important given the recent "rash of pharmacy robberies" in central Maine. When considering Stile's request for a departure under U.S.S.G. § 5H1.3, the court specifically noted that if it departed downward because of Stile's addiction, then "there would be few [defendants] who would not be entitled to a similar downward departure who commit similar crimes." It observed that in pharmacy robberies, in particular,

defendants frequently suffer from mental conditions and addictions.

We conclude that the sentencing court did not abuse its discretion in considering Stile's drug addiction. The record reflects an attentive and deliberative sentencing judge who permitted the defendant to offer relevant evidence and explained quite carefully and clearly how he weighed the factors involved in the exercise of his judgment. We require no more. See United States v. Denson, 689 F.3d 21, 27–28 (1st Cir. 2012).

To the extent that Stile complains not about process, but rather about the substance of the court's weighing of the various § 3553(a) factors, his argument does not take into account the degree of deference we afford the district court. Although "a sentencing court may commit procedural error by failing to consider the § 3553(a) factors, . . . the weighing of relevant factors is largely within the court's informed discretion." United States v. Santiago-Rivera, 744 F.3d 229, 232 (1st Cir. 2014) (citations omitted); see also United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015) ("The defendant's real complaint is not that the court overlooked [the defendant's personal history and characteristics] but that it weighed those factors less heavily than he would have liked. But that type of balancing is, within wide limits, a matter for the sentencing court.").

The court chose to focus on the features of the crime that made it particularly terrifying to the victims and that demonstrated Stile's degree of forethought and preparation. On this record, the court did not abuse its discretion in giving less weight to Stile's drug addiction and more weight to the possibility of general deterrence. See United States v. Vélez-Soto, 804 F.3d 75, 79-80 (1st Cir. 2015) ("A sentencing court need not 'specifically address all of the § 3553(a) factors in its explanation, nor . . . give each of the factors equal prominence in its determination.'" (quoting United States v. Zapata, 589 F.3d 475, 487 (1st Cir. 2009))); United States v. Gibbons, 553 F.3d 40, 47 (1st Cir. 2009) ("We will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others . . . .").

**D.   Substantive Reasonableness**

Stile's argument that his sentence is substantively unreasonable essentially duplicates his argument that the district court improperly weighed the § 3553(a) factors. "Ultimately, 'the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result.'" United States v. Rivera-Gonzalez, 626 F.3d 639, 647 (1st Cir. 2010) (citation omitted). For the reasons given above, the duration of Stile's sentence was not substantively unreasonable.

**III. Conclusion**

For the foregoing reasons, we <u>affirm</u> Stile's sentence.